ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| BARQUÍN INTERNATIONAL CORPORATION Y OTROS<br><br>RECURRIDOS<br><br>v.<br><br>ASOCIACIÓN DE MAESTROS DE PUERTO RICO Y OTROS<br><br>PETICIONARIOS | KLCE202400063 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Número: SJ2020CV02902<br><br>Sobre: Daños y perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de enero de 2024.

La Asociación de Maestros de PR y otros comparecen ante este Tribunal de Apelaciones mediante el recurso de *certiorari* y nos pide que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, emitida y notificada el 3 de noviembre de 2023. Por medio de dicho dictamen el foro primario declaró no ha lugar la solicitud de sentencia sumaria presentada por ambas partes involucradas en el caso.

Por los fundamentos a continuación, denegamos la expedición del auto de *certiorari*.

**I**

Por hechos acontecidos el 25 de mayo de 2019, Barquín International Corporation, empresa privada dedicada a la venta de equipos electrónicos y programas de computadora, presentó una demanda sobre daños y perjuicios en contra de la Asociación de Maestros de PR a la luz de un contrato de arrendamiento que pactaron entre estos. En esencia sostuvo que durante la madrugada se quebró un tubo del edificio que provocó una inundación que afectó la propiedad arrendada y, por consiguiente, causó daños a los bienes de la empresa. Barquín alegó que sufrió daños a su propiedad ascendentes a $3,515,703.87, además

sostuvo que sus operaciones se vieron interrumpidas por los trabajos de reparación los cuales le ocasionaron daños estimados en $1,500,000.00. Asimismo, reclamó una suma no menor de $360,000.00 como indemnización por los gastos de la empresa y $250,000.00 por las angustias y sufrimientos mentales de Ramón C. Barquín por el efecto que tuvo esta situación en su trabajo y esfuerzos en rehabilitar su empresa. Finalmente, la compañía sostuvo que procedía una indemnización adicional de $250,000.00 por los daños a la reputación y buen nombre de la marca de la empresa.

Por su parte, los peticionarios contestaron la demanda al negar que fuera negligente en momento alguno. Además, sostuvieron que la tubería que colapsó se encontraba dentro de la pared del edificio, por lo cual no tenía acceso a darle mantenimiento, predecir o prevenir su destrucción. Del mismo modo, adujo que los daños reclamados eran exagerados, especulativos, preexistentes a la fecha de los hechos alegados y no guardaban relación con la realidad. También, sostuvo que si hubo algún daño este fue el producto de un caso fortuito o causa interventora.

Posteriormente, los peticionarios presentaron *Solicitud de sentencia sumaria* en la que plantearon que, mediante el contrato de arrendamiento pactado entre las partes, el recurrido relevó la responsabilidad de estos. Precisamente, adujo que la cláusula leía como sigue:

> Ni la ARRENDADORA ni los agentes ni empleados de la ARRENDADORA serán responsables, y por la presente el ARRENDATARIO releva a la ARRENDADORA y a los agentes y empleados de la ARRENDADORA de toda reclamación por daños a la persona o a la propiedad (incluyendo pérdida o interrupción de negocio) del ARRENDATARIO o de alguna persona que así lo reclame a través del ARRENDATARIO, que resultare de fuego, accidente o condición en el local accidentado, el complejo y aceras, calles y otras áreas que colinden o estén adyacentes a dicho complejo, incluyendo, pero no limitado a reclamaciones por daños que resultaren de; (i) cualquier defecto o falla de plomería, o equipo de aire acondicionado, alambrado eléctrico o instalaciones del mismo, tubos de agua; (ii) cualquier equipo o accesorio fuera de servicio; (iii) la explosión, colación o filtración de cualquier tanque, fuente de agua, lavamanos, inodoro, tubo de desperdicios, drenaje u otro tubo o tanque en, sobre o alrededor del complejo o local accidentado; (iv) el retroceso de cualquier tubería sanitaria o conducto, (v) el escape de vapor o agua caliente; (vi) agua

saliente de o viniendo por el techo o cualquier lugar en o cerca de dicho complejo o edificio local; (vii) el caerse cualquier instalación, estucado o empañetado; (viii) cristal roto; (ix) el ejercicio de este contrato; (x) cualquier acto u omisión de otras partes que no sean la ARRENDADORA, sus empleados o agentes, (xi) cualquier acto u omisión de la ARRENDADORA, sus agentes y empleados, a menos que dicho acto u omisión constituya negligencia de la ARRENDADORA. El ARRENDATARIO acuerda, sin embargo, que en ningún caso se hará valer derecho alguno de subrogación en contra de la ARRENDADORA por cualquier lesión o daño sufrido por el ARRENDATARIO según se ha mencionado, sea o no por negligencia crasa. Ni la ARRENDADORA ni sus agentes serán responsables de daño a la propiedad del ARRENDATARIO ni de otras personas empleadas en el complejo, ni por la pérdida o daño a la propiedad alguna del ARRENDATARIO debido a hurto o a alguna otra razón.

Además, argumentaron que dicho contrato no fue suscrito por Barquín, sino con el Sr. Molina en su carácter personal, y que el subarriendo estaba proscrito por el mismo contrato. Asimismo, sostuvo que no se encontraba presente el elemento de relación causal entre los alegados actos negligentes y los daños reclamados ni la previsibilidad de estos. Por su parte, la parte recurrida se opuso y, a su vez, presentó una moción de sentencia sumaria a su favor en la que sostuvo que la cláusula de relevo de responsabilidad contenía una excepción.

Tras múltiples instancias procesales, el Tribunal de Primera Instancia dictó *Resolución* mediante la cual denegó la *Solicitud de Sentencia Sumaria* al encontrar que se encontraban en controversia los siguientes hechos:

1. En relación a los daños por pérdida de propiedad que reclama Barquín, está en controversia cuál es la propiedad específica que sufrió daños y/o pérdidas como resultado del incidente ocurrido el 25 de mayo de 2019.
2. Está en controversia la magnitud, extensión y valoración de los daños alegados por Barquín.
3. Si era previsible que el tubo de agua que se rompió y ocasionó la filtración de agua y luego la inundación el día de los hechos, estaba oxidado, corroído y/o deteriorado.
4. Si, conforme lo anterior, hubo un acto u omisión por parte de la AMPR respecto al evento de la rotura del tubo de agua. De contestarse en la afirmativa, si existe un nexo causal entre los daños y pérdidas en propiedad alegadas por Barquín y dicho acto u omisión.
5. Si la póliza que MAPFRE expidió a favor de la AMPR, y que estuvo vigente durante los hechos del 25 de mayo de 2019, cubre los daños alegados por Barquín.

Inconforme, luego de rechazar las mociones de reconsideración de ambas partes, los peticionarios presentaron el *certiorari* ante nuestra consideración. Mediante este recurso discrecional señalaron que el Tribunal de Primera Instancia incurrió en los siguientes errores:

> Primer error: Erró el TPI al determinar que la frase o excepción "a menos que dicho acto u omisión constituya negligencia de la ARRENDADORA" incluída en el último inciso de la Cláusula de Renuncia de Reclamaciones (el inciso 'xi') aplica a los incisos 'i','ii', 'iii' y 'vi' invocados por la compareciente, en abstracción de la "regla del último antecedente" y lo resuelto en Meléndez v. Tribunal, 90 D.P.R. 656 (1964). Particularmente, considerando que: (i) a diferencia del inciso 'xi', los tres incisos señalados no incluyen ni utilizan los términos acto ni omisión y (ii) los puntos y comas que separan cada una de las 11 (xi) enumeraciones de la cláusula claramente establecen 11 supuestos separados y distintos.

> Segundo error: Erró el TPI al no formular como hechos probados 13 hechos que tanto la compareciente como la parte demandante consignaron no están en controversia, y además eran materiales. Erró además al no formular como hechos probados 3 hechos adicionales, lo[s] cuales: (i) no fueron controvertidos por la parte demandante mediante evidencia; y (ii) están sustentados en transcripciones de deposiciones y otra prueba admisible en evidencia.

> Tercer error: Erró el TPI al no desestimar la Demanda por ausencia de nexo causal, a pesar de que la propia parte demandante admitió que desconocía que en el local en cuestión había equipo valorado en $3.5 millones, *incluso para efectos de sus propias responsabilidades contributivas,* para cuyos propósitos lo valorizó en aproximadamente $26,000.00.

Por su parte, la parte recurrida presentó *Oposición a expedición de certiorari y alegato* mediante el cual sostuvo que no procedía la expedición del auto porque no había mediado perjuicio, parcialidad, ni error craso en la apreciación de la prueba por parte del Tribunal de Primera Instancia.

## II

## A

El auto de *certiorari* es el vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723 (2016). En esencia consiste en un recurso extraordinario caracterizado por que descansa en la discreción del tribunal para su expedición, la cual no es irrestricta. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012). El tribunal

tiene discreción para atender el asunto planteado, bien sea para expedir o denegar el auto. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011). En estos casos procede un análisis dual para determinar si se expide o no un recurso de *certiorari*, el cual consta de una parte objetiva y otra subjetiva.

Primero, la Regla 52.1 de las Reglas de Procedimiento Civil, 32 LRPA Ap. V, R. 52.1, establece que el recurso de *certiorari* para revisar resoluciones interlocutorias del Tribunal de Primera Instancia será expedido, entre otros, cuando se recurra de la denegatoria de una moción de carácter dispositivo u alguna orden bajo las Reglas 56 y 57. A esos efectos, el primer examen para que un recurso de *certiorari* sea expedido es que tenga cabida bajo uno de los escenarios contemplados en la Regla 52.1, *supra*.

Superada esta primera etapa, procede examinar si se justifica nuestra intervención a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones. 4 LPRA Ap. XXII-B, R. 40. Recuérdese que es un recurso que depende de la discreción del tribunal revisor. Conforme a esta Regla, los criterios que justifican nuestra intervención son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, la discreción judicial no opera en el vacío. En etapa de revisión judicial es norma reiterada que el Tribunal de Apelaciones no habrá de intervenir con el ejercicio de discreción del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción,

prejuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012) (citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Un *certiorari* solo habrá de expedirse si al menos uno de estos criterios aconseja la revisión del dictamen recurrido, por tanto, debemos ejercer nuestra discreción para evaluar si, a la luz de estos criterios, se requiere nuestra intervención. Si no fuera así, procede que nos abstengamos de expedir el auto, de manera que se continúen los procedimientos del caso sin mayor dilación en el foro de primera instancia.

**B**

En nuestro ordenamiento jurídico, la sentencia sumaria responde al propósito de aligerar la conclusión de los pleitos eliminando el juicio en su fondo, pero siempre y cuando no exista una legítima disputa de hecho a ser dirimida, de modo que lo restante sea aplicar el derecho solamente". *Jusino et als. v. Walgreens*, 155 DPR 560, 576 (2001). Véase, además, *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018). Conforme a la Regla 36 de Procedimiento Civil, *supra*, para adjudicar una moción de sentencia sumaria se requiere la presentación de "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" bien sea sobre la totalidad de la reclamación o parte de esta. En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

En armonía con lo anterior, la sentencia sumaria solo debe dictarse en casos claros. Si no existe certeza sobre todos los hechos materiales en la controversia, no procede que se dicte sentencia sumaria. Sin embargo, se ha establecido que la sentencia sumaria, "[p]rocede, aunque se hayan alegado hechos que aparenten estar en controversia, pero cuando el

promovente logre demostrar preponderantemente, y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares." *Jusino et als. v. Walgreens*, *supra*, a la pág. 577. Ante esta situación, la parte promovida debe "defenderse de la misma forma, es decir, apoyándose a su vez de documentos u otra evidencia admisible." *Id.*

En fin, toda vez que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley." *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia." *Meléndez González v. M. Cuebas*, *supra*, a las págs. 109-110. De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al*, 132 DPR 115,133 (1992).

Según se ha reiterado jurisprudencialmente, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) considerar solamente los documentos que se presentaron ante el foro de primera instancia; y (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Esto es, estamos impedidos de adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio. Por consiguiente, el Tribunal Supremo en *Meléndez González et. al. v. M.*

*Cuebas*, *supra*, estableció el estándar que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria.

En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario". *Id*. en la pág. 118. Además, reiteró que por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil*. Id.*

**III**

La parte peticionaria expone en su recurso de *certiorari* que erró el TPI al no dictar sentencia sumaria por determinar que aplicaba la excepción contenida en el propio contrato de arrendamiento. Además, sostiene que erró el foro de instancia al no acoger como hechos probados los trece (13) hechos consignados por ambas partes sobre los cuales no hay controversia. Finalmente, argumenta que el tribunal inferior debió desestimar la demanda por ausencia de nexo causal cuando los propios recurridos admitieron que desconocían que en el local arrendado había equipo valorado en $3.5 millones, cuando para efectos contributivos se había valorado en $26,000.00.

Conforme a la Regla 52.1 de Procedimiento Civil, *supra*, nos encontramos ante uno de los escenarios contemplados por dicha disposición para presentar recursos de *certiorari* ante este Tribunal. Específicamente, solamente se expedirá este tipo de recursos cuando se recurra de una resolución o denegatoria de una moción de carácter dispositivo. Entre las mociones de este tipo se encuentran las solicitudes de sentencia sumaria que fueron denegadas en el caso ante nuestra consideración. No obstante, el ejercicio de discreción que nos compete realizar no basta con la aplicación de esta regla.

Nos corresponde analizar si procede la expedición del recurso de *certiorari* a la luz de los criterios dispuestos por la Regla 40 del Reglamento del Tribunal de Apelaciones. Luego de un cuidadoso análisis del expediente, y de las determinaciones de hechos realizadas por el TPI, resolvemos que no se justifica nuestra intervención en esta etapa del procedimiento judicial. Habiendo considerado *de novo* el listado de hechos controvertidos incluidos en el dictamen del Tribunal de Primera Instancia, nos resulta evidente que su juicio acerca de la existencia de los hechos en disputa tiene base adecuada y racional en el expediente, lo cual impide la disposición sumaria de la controversia y amerita la celebración del juicio en su fondo.

En primer lugar, la interpretación del foro recurrido respecto a la cláusula de relevo de responsabilidad no constituye un error de derecho o abuso de su discreción. Esto se debe a que surge de la prueba anejada a la *Solicitud de sentencia sumaria* que las partes pactaron el relevo de responsabilidad sobre "cualquier acto u omisión de la ARRENDADORA, sus agentes y empleados, *a menos que dicho acto u omisión constituya negligencia de la ARRENDADORA*". Esta cláusula siendo general en cuanto a cualquier acto, deja en controversia si de hecho los peticionarios fueron negligentes.

Segundo, respecto a los alegados hechos consignados por ambas partes, estos eran hechos inmateriales a las causas de acción o eran conclusiones de derecho correspondientes al Tribunal. Entiéndase, aquellos que no fueron expresamente adoptados por el Tribunal de Primera Instancia como hechos incontrovertidos son asuntos no materiales para la adjudicación de la acción ante la consideración del Tribunal.[1] Entre estos se encuentran los hechos 2.1, 2.5-2.7, 2.9 y 2.15 sugeridos en la moción de sentencia sumaria. Por consiguiente, no nos corresponde intervenir en cuanto a este señalamiento de error. Tercero, existe controversia

---

[1] Un hecho material es aquel componente de la causa de acción, "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". *Meléndez González v. M. Cuebas*, *supra*, en la pág. 110.

sustancial respecto al nexo causal y sobre la valoración de los daños, propiamente reconocido por las partes. No erró el Tribunal de Primera Instancia al concluir que no era recomendable dictar sentencia sumaria.

Cónsono con lo anterior, no encontramos que el tribunal primario haya incurrido en un abuso de discreción o que haya actuado bajo prejuicio o parcialidad que acarree un fracaso de la justicia. Tampoco se demostró que el foro recurrido se haya equivocado en la interpretación o aplicación de una norma procesal ni que intervenir en esta etapa evitaría un perjuicio sustancial contra los peticionarios, razón por la cual denegamos la expedición del *certiorari*.

**IV**

Por los fundamentos anteriores, a la luz de los criterios que guían nuestra discreción, declaramos no ha lugar la expedición del recurso de *certiorari*.

**Notifíquese inmediatamente.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones